Woodruff *v.* Hurson.

The judgment must be affirmed with costs.

[New York General Term, September 17, 1860. *Sutherland, Allen* and *Bonney,* Justices.]

---

32b 557,
10ap445.

## Woodruff *vs.* Hurson and others.

To constitute usury, there must be an unlawful or corrupt intent confessed or proved. The party must intentionally take or reserve, directly or indirectly, as interest or as a compensation for giving time of payment, more than at the rate of seven per cent per annum.

Two things must concur: 1. A giving of time, and 2. A reservation of more than seven per cent as a consideration for such forbearance.

A taking or receiving more than the legal interest, by mistake, or for any consideration other than the forbearance, unless it be merely colorable and with intent to cover up usury, will not render a transaction void as being in violation of the statute regulating the interest of money.

The giving of a sum of money by the debtor, to the creditor, or the including of an amount in addition to the actual indebtedness in a security given for the real debt, as a gift, will not bring the security within the statute against usury.

Although the making of a nominal gift is, in general, a suspicious circumstance, yet when it is clearly established that it is in truth a gift, voluntarily made, having no connection with the time given for the payment of the debt, the security will be valid, whatever may have been the moving cause of the gift, with the donor.

If the donee or creditor be innocent of any intent to exact or receive more than the legal rate of interest, his security will be valid.

A motion to amend an answer, so as to authorize certain evidence to be given, if within the jurisdiction of a referee to grant, is addressed to his discretion, and from his decision no appeal will lie.

The denial of such a motion is not the subject of an exception, which only lies to some ruling or decision upon, and in the progress of, the trial.

Woodruff *v.* Hurson.

Where the amendment proposed to be made, in an answer, contemplates a new defense, *pro tanto*, a referee has no jurisdiction over the motion, and the amendment, if granted, would be irregular.

An attorney, employed by a mortgagee to draw a bond and mortgage, and who acts for him at the execution and delivery of the instruments, not being employed by the mortgagor in the capacity of attorney, counsellor or negotiator in regard to the bond and mortgage, is a competent witness to prove the consideration of the mortgage, and what transpired between the parties, and between himself and the mortgagor, upon the occasion of giving the mortgage; facts thus coming to his knowledge not being privileged communications, within the rule on that subject.

The attorney is a competent witness to prove the negotiation and agreement between the parties; or between the mortgagor and himself as the attorney and agent of the mortgagee.

THE plaintiff brought this action to foreclose a mortgage executed by John Hurson and wife, dated October 16th 1855, to secure the payment of $21,537 on the 16th day of October, 1865, with interest semi-annually. The defense was usury. The cause was referred to W. H. Leonard, Esq. by whom it was tried. On the trial evidence was given of an indebtedness from the mortgagor to the plaintiff, at the date of the mortgage, for money lent. There was some conflict of evidence as to the actual amount, but the referee found the amount to be $16,537.45. The defendant gave evidence tending to show that $5000 was included in the mortgage as a consideration for extending the time of credit for the ten years, while the evidence on the part of the plaintiff was that time was given without any consideration, and that the $5000 was inserted in the mortgage by the defendant without the knowledge of the plaintiff, and as a gift voluntarily made by the defendant. The referee found in accordance with this version of the transaction, and held the mortgage a valid security for the amount actually loaned, and gave judgment accordingly. Various questions were made upon the trial, which, so far as reviewed upon this appeal, are noticed in the opinion. The defendants appealed from the judgment entered upon the report of the referee,

Woodruff *v.* Hurson.

*H. Brewster,* for the appellants.

*L. R. Marsh,* for the respondent.

*By the Court,* ALLEN, J.   The question of usury was one of fact, and unless the determination of the referee was clearly against the weight of evidence it ought not to be disturbed by us.   With the witnesses before him, and with all the aid which an oral examination of them gave him, he was in a much better situation to pass upon their relative credibility and the value of their testimony than we can be from a mere transcript of their testimony.   If the transaction was as related by Dusenbury, there was clearly no usury.   The loan had been made, and the security and time and terms of payment agreed upon, without any suggestion of any compensation or payment beyond interest at seven per cent.   Usury consists in the taking or receiving a greater sum or value for the loan or forbearance of money &c. than is prescribed by law, and contracts and securities are only void for usury when there is reserved or taken, or secured or agreed to be taken, any greater sum &c. for the loan or forbearance of money &c. than is prescribed by statute.   (1 *R. S.* 772, §§ 1–5. *Laws of* 1837, *Ch.* 430, § 1.)   To constitute usury there must be an unlawful or corrupt intent confessed or proved.   (*Nourse v. Prime,* 7 *John. Ch.* 69.)   The party must intentionally take or reserve, directly or indirectly, as interest or as a compensation for giving time of payment, more than at the rate of seven per cent per annum.   Two things must concur: 1st, a giving of time, and 2d, a reservation of more than seven per cent as a consideration for such forbearance.   A taking or receiving more than the legal interest by mistake, or for any consideration other than the forbearance, unless it be merely colorable, and with intent to cover up usury, will not render a transaction void as in violation of the statute regulating the interest of money.   If a person deliberately adopt a mode of computing interest which will give more than the legal rate of interest, he will be held to have intend-

Woodruff *v.* Hurson.

ed the legal consequences of his acts, and his security will be void. But if he take or reserve an excess of interest from a mistake in computing upon a principle correct in itself, the security will not be void. (*Bank of Utica* v. *Wager*, 2 *Cowen*, 712, 8 *id.* 398. *New York Firemen Ins. Co.* v. *Sturges*, 2 *id.* 664. *Same* v. *Ely*, *Id.* 678. *Archibald* v. *Thomas*, 3 *Cowen*, 284.) The giving of a sum of money by the debtor to the creditor, or the including of an amount in addition to the actual indebtedness in a security given for the real debt, as a gift, will not bring the security within the statute against usury. It is true, in most cases it would be a suspicious circumstance, and it would devolve on the court, before upholding the security, to be satisfied that such was the real nature of the transaction; that the nominal gift was not in reality a compensation for the forbearance and so colorable and a shift to evade the statute. But when it is clearly established that it is in truth a gift voluntarily made, having no connection with the time given for the payment of the debt, the security will be valid, no matter what may have been the moving cause of the gift with the donor. If the donee or creditor be innocent of any intent to exact or receive more than the legal rate of interest, his security will be valid. In the case at bar, if the referee had found the transaction usurious we probably could not have interfered with his judgment. But I am better satisfied with the finding as it is than I should have been with a different result. The confessions and declarations of the plaintiff, even admitting that they have been remembered and reported with a verbal accuracy which is necessary in this particular case to entitle them to any force whatever, and which cannot be certainly known, are entitled to but little weight. The plaintiff is shown to be an intemperate, rash and inconsiderate man, and the expressions were made under the excitement of passion, and should be received with much allowance. Under all the circumstances of this case, and in view of the fact that a very slight change in the mode of expression would entirely

vary its effect as an admission, but little reliance ought to be placed on these declarations. The testimony of the defendant who alone proved the usury is not entirely satisfactory, and his appearance as a witness and as presented by the record of his evidence, is not such as to place him above suspicion. He was contradicted by Mr. Dusenbury in several important particulars, and, so far as can be determined from the case, the referee was discreet in giving credit to Dusenbury and holding the usury not proven, and that the five thousand dollars was included in the mortgage at the suggestion and request of the mortgagor without the knowledge of the mortgagee, as a donation. Whether the mortgagor had any ulterior object, and designed to lay the foundation for this defense, is not known. But it is sufficient to uphold the security that the sum was included at his request, and professedly as a gift, and was accepted by the plaintiff and his agent as a gift, and not as a cover for usury. Neither the intent or design to take usury, nor the agreement to pay usury, was established by the evidence.

In the course of the trial the defendant offered in evidence three notes of the plaintiff, payable to the order of the mortgagor, by way of set-off, and to reduce the amount due upon the mortgage. The defendants had alleged in their answer a payment of eight hundred dollars, which was admitted by the plaintiff, and no other set-off or payment or counterclaim was set up. The referee properly excluded the evidence, as not within the issue, or authorized by the answer. The motion to amend the answer of the defendants so as to authorize the evidence to be given, if within the jurisdiction of the referee to grant, was addressed to his discretion, and from his decision no appeal will lie. The denial of the motion was not the subject of an exception, which only lies to some ruling or decision upon and in the progress of the trial. Because a motion chances to be made while the trial is proceeding, and before the same judge, it does not for that reason make a part of the trial. But the amendment contemplated

a new defènse *pro tanto*, and to the extent proposed would have changed the defense, and the referee, therefore, had not jurisdiction over the motion, and an amendment, as asked, by direction of the referee, would have been irregular. (*Union Bank* v. *Mott*, 19 *How.* 267. 18 *id.* 506, *per Gray, J. Everett* v. *Vendryes*, 19 *N. Y. Rep.* 439.)

Upon the trial the attorney by whom the bond and mortgage were drawn, and who in the transaction acted for the plaintiff, was examined as a witness and gave evidence of what transpired between the parties, and between himself and the mortgagor, upon the occasion of giving the mortgage. The defendants objected, upon the ground that the relation of counsel and client existed between the witness and the defendant, and that the former was not therefore permitted to disclose what took place at the interviews spoken of by the witness. The witness testified that he was not employed by the defendant in the capacity of attorney, counsellor or negotiator, in regard to the bond and mortgage in suit, and that the mortgagor had no legal counsel present at any of the interviews. It also appeared that the witness had been employed by the mortgagor to negotiate another loan upon the same premises, and had done so, and searched the title and perfected the security, for which he was to receive a specific sum, which sum was paid by the mortgagor. This was the only evidence of any professional relation of the witness to the mortgagor. The witness testified to the consideration of the mortgage, and the acts of the parties, rather than to any declarations or communications of the mortgagor to him.

The rule is well settled that communications to an attorney in the course of any professional employment, relating to the subject of the employment, and which may be supposed to have been drawn out in consequence of the relation in which the parties stand to each other, are under the seal of confidence, and entitled to protection as privileged communications. (*Bank of Utica* v. *Mersereau*, 3 *Barb. Ch.* 595.

*Williams* v. *Fitch,* 18 *N. Y. Rep.* 546.) Within this rule the communications proved upon this trial were not privileged. The only act in which it can be claimed that the witness in any sense acted as the attorney or adviser of the mortgagor, was in drawing the bond and mortgage, and the communications were not made to enable the witness to prepare the securities. They were admissions and declarations as to the claim of the plaintiff, made to the witness when acting as the attorney for the plaintiff, and presenting the demand for payment, or made to the plaintiff in the presence of the witness and in the process of stating the amount due to the plaintiff, and cannot be supposed to have been drawn out in consequence of any confidential relation between the parties. An attorney employed by vendor and purchaser, or employed by one and paid by both in equal moieties, will not be permitted to disclose the communications of either, made to him to enable him to prepare the deed, or to produce the draft of the deed in evidence without the consent of both. (2 *Adol. & Ellis,* 171.) Neither will an attorney be permitted to produce in evidence against his client or without his consent, an abstract of title furnished him to enable him to raise money. (*Doe* v. *Watkins,* 4 *Scott,* 155; *S. C.* 3 *Bing. N. C.* 421.) But this case is not within the principle of those and similar cases. It is rather the proving of a communication from the mortgagor to the plaintiff, which cannot be within the privilege claimed. A witness may be called upon by the plaintiff to state a conversation in which the defendant proposed a compromise to the plaintiff, although the witness attended on that occasion as attorney for the defendant. (*Griffith* v. *Davies,* 5 *B. & Ad.* 502.) The attorney was a competent witness to prove the negotiation and agreement between the parties or between the mortgagor and himself as the attorney and agent of the plaintiff.

The exception of the defendants to the rulings of the referee admitting evidence of the agency of the plaintiff in procuring another advantageous loan to the defendant is not

well taken. That evidence ·was competent to show his · friendly relations with the mortgagor and to counteract the effect of the evidence of threats to injure and ruin the latter. So 'far as such threats had a tendency to show a design to oppress the mortgagor, friendly acts showing the absence of such design were competent. So, too, the evidence of the plaintiff's habits might have been competent to enable the referee to determine what stress should be laid upon ·the declaration of the plaintiff of a boasting or threatening character. But such evidence was only given to account for the absence of the plaintiff from the trial, to the end that no argument in favor of the truth of the defendants' allegations could be derived from the omission of the plaintiff to·contradict them by his oath. For this purpose the evidence was competent. The judgment of the referee must·be affirmed with costs.

[NEW YORK GENERAL TERM, September 17, 1860.   *Sutherland, Bonney* and *Allen,* Justices.]