Mr. Justice GRIER
 

 delivered the opinion of the court.
 

 This is an action of trespass on the case brought by. the plaintiff in error against the city of Boston, for the erection and maintenance of a drain at the foot of Summer street, wMch, it is alleged, is a nuisance, and injurious to the property' of plaintiff. He is owner of two wharves, called the Price and the Bull wharf, which are extended from high to low-water mark, from the lots which adjoin Summer street on each side.
 
 *267
 
 The nuisance, which is the subject of complaint in this case, is the same as that in the case of Boston
 
 v.
 
 Lecraw, decided in this court, and reported in 17 Howard, 426.
 

 The declaration contains seven counts, in four of which the plaintiff, as owner of the several wharves, and having the seizin and possession, claims a right of way, as appurtenant to the same, over the “dock” or “way and dock,” which constitutes the interval between the wharves; also, that his wharves are bounded on the “town dock,” “town way or dock,” which he alleges to have been long used as a “public dock, slip, or way.”
 

 The fifth and sixth counts are for injuries to the reversion, with like averments. A seventh count avers the wharves to be bounded, respectively, “by a highway, town way, or public way, to the sea, extending from the corner of Summer and Sea streets to the channel, or low-water mark, which was duly laid out and established pursuant to law.”
 

 The defendant pleaded the general issue, and on the trial the plaintiff offered in evidence the record of a former verdict and judgment rendered in his favor in an action against defendant for the erection of the same nuisance, the continuance of which is the subject of the present suit. The rejection of this evidence by the court is the subject of the first bill of exceptions.
 

 It is contended that this record was not only evidence, but conclusive of the right of the plaintiff, and prima facie evidence of the continuance of such right; and that plaintiff' having no opportunity to plead it as an estoppel, may exhibit it as matter of evidence.
 

 .It may be admitted that numerous decisions maybe found in many of the State courts affirming this proposition; nevertheless, it has not been universally adopted. The leading case of Outram
 
 v.
 
 Morewood (2 East., 174) establishes the following proposition, in which all concur: “That if a verdict be found on any fact or title distinctly put in issue in any action of trespass, such verdict may be pleaded, by way of estoppel, in another action between the same parties or their privies, in respect to the same fact or title.” But estoppels, which 5reelu.de the party from showing the truth, are not favored. 'o give the verdict the effect of an estoppel, the facts must be distinctly put in issue.
 

 The plea of the general issue, in actions of trespass, or case, does not necessarily put the title in issue; and, although the judgment is conclusive as a bar to future litigation for the thing thereby decided, it is not necessarily an estoppel in another action for a different trespass. The judgment can
 
 *268
 
 only give the plaintiff an ascertained right to his damages, and the means of obtaining them. These principles seem to have been adopted by the courts of Massachusetts, and applied to cases like the present. In the decision of this point, we must be guided by the decisions of the courts of that State.
 

 In the case of Standish
 
 v.
 
 Parker, (2 Pick., 20,) which was an action for a nuisance, the court say: “We think it very clearly settled that nothing is conclusively determined by the verdict but the damages for th,e interruption covered by the declaration. In actions for torts, nothing is conclusively settled but the point or points put directly in issue. By the plea of the general issue, the title is not concluded, because it cannot be made to appear upon the general issue that the title ever came in question.” (See also 15 Pick., 564.)
 

 Nevertheless, though a verdict in such case is not conclusive, it is pei'mitted to' go to the jury as prima facie, or persuasive, evidence. (3 Pick., 288.) If the evidence of the facts involved in the first trial are still doubtful, if witnesses were then examined whose testimony cannot now be obtained, for these and many other reasons the former verdict may have the effect of highly-persuasive evidence on another trial of the same question. But if on the last trial new evidence has been discovered, or if the question of title submitted on the first trial was connected with instructions in law which have since been found to be erroneous; or if a different verdict on the same evidence would have resulted from the different instruc- ' tions given on the last, it is plain that the first verdict .could have but little or no persuasive effect. Title is often a question of mixed law and fact — and a party is not concluded by an erroneous opinion of the court, pronounced in a former case.
 

 We are of opinion, therefore, that the court erred in not permitting the record of the former suit to be given in evidence to the jury.
 

 2. At the conclusion of the trial, the court, at the request of defendant’s counsel, instructed the jury “that there was not sufficient evidence in the cause to authorize the jury to find, the rights claimed by the plaintiff.”
 

 As it is the duty of the jury to decide the facts, the sufficiency of evidence to prove those facts must necessarily be within their province. The jury cannot assume the truth of any material averment without some evidence; and it is error in the court to instruct the jury that they may find a material fact of which there is no evidence. An instruction like this is imperative on a jury; it has taken the place, in practice, of a demurrer to evidence,'and must be. governed by the same rules. If there be “no
 
 evidence
 
 whatever,” as in the case iff
 
 *269
 
 Parks
 
 v.
 
 Ross, (11 How., 398,) to prove tbe averments of tbe declaration, it is tbe duty of tbe court to give sucb peremptory instruction. But if there be
 
 some
 
 evidence tending to support tbe averment, its value must be submitted to tbe jury with proper instructions from the court. If this were not so, tbe court might usurp tbe decision of facts altogether, and make tbe verdict but an echo of their opinions.
 

 The court below seem to have considered the decision of this court, in tbe case of Boston
 
 v.
 
 Lecraw, as requiring them to give the instruction demanded by tbe defendant. Tbe action in that case was for tbe same alleged nuisance by a tenant of tbe present plaintiff. But the plaintiff in that case claimed no other right of way over tbe lands of defendant, save tbe public right of navigation; and this court decided that tbe public right of navigation, between high and low-water mark, was defeasible at any time by the owner of tbe subjacent land. That, ás tbe space between tbe plaintiff’s wharves bad been converted into a dock by tbe accident of its position, so long as it remained unreclaimed, every person bad a right to pass and repass over it. Tbe exercise of this public right, for any length of time whatever, would therefore form no grounds of presumption either of a public dedication or a private grant to the owners of tbe adjoining wharves. "While it remains unre-claimed, it is a public highway or dock, by a paramount but defeasible title. Tbe adjoining wharves may receive much more advantage than others from tbe use of it, but they cannot convert it to a private use, under color of a public right.,.
 

 Tbe public officers of a town have no right to lay out a town way between high water and the channel of a navigable river, or appropriate the shore or flats to the use of the inhabitants, of a town in the form of a way or road. (1 Pick., 179; 5 Pick., 494.) But in the present case tjie city of Boston is owner of the land, and has the same right to reclaim their flats which other owners have. Before they are so reclaimed, the public and the adjoiners may exercise their paramount right of navigation. But if the city elects to reclaim its portion of the shore, and extend Summer street to low water, it has a right so to do. And if the street should be less.beneficial to the adjoiners in this form, than when they could use it as a dock under the public right of navigation, they cannot complain. The absence of these advantages may be a loss to them,'-but if incurred by the defendants’ exercise of their own rights, it is no wrong to them.
 

 But if the city has determined to reclaim this land, and has laid out a street thereon, or continued Summer street to low-water mark, the right to use it as a street or highway on land
 
 *270
 
 becomes appurtenant to tbe property of the adjoiners. It may be the duty of the city to make drains along or under the streets, but they cannot construct them so as to hinder the public use of them as streets, or erect thereon a nuisance to the adjoiners. If Summer street be extended to low water, the plaintiff has a right to pass along and across the same, and anything which obstructs such passage is a nuisance, and injurious to his rights.
 

 The seventh count of plaintiff’s declaration claims a right Of way as appurtenant to his land or wharves, on the ground that Summer street extends to low water. In support of this allegation, the following entry in the town records was given in evidence: “ October 31, 1683. The selectmen all met this day, staked out a highway for the town’s use, on the southerly side of the land belonging to the late John Gill, deceased, being thirty foot in breadth from the lower corner of said Gill’s wharf next the sea.”
 

 It is the duty of the court to construe written instruments; but the application of their provisions to external objects described therein is the peculiar province of the jury. Whether this document describes Summer street as it was afterwards laid out from high-water mark; whether “the lower corner of Gill’s wharf next the sea” was at
 
 that time
 
 (in 1683) at low-water mark; whether this street was staked out to low water, were questions which should have been submitted to the jury. The fact that the learned counsel differ so widely as to the situation of the points called for as the boundary of the street next the sea, shows conclusively that it is a question for the jury, and not for the court.
 

 Moreover, the court were requested by plaintiff’s counsel to -instruct the jury, “that if the jury shall find that, by reason of the acts of defendants complained of in the declaration, that part of plaintiff’s wharf below low-water mark, held by him under a grant of the Legislature, has been injured in the manner set forth in the declaration, then the plaintiff is entitled to recover.”
 

 There was some evidence that the drain constructed by defendant-was not carried out sufficiently to discharge its contents so as to be swept off by the tides; but that it caused an accumulation of matter at the outer end of the plaintiff’s wharves, insomuch that vessels could not approach them with the same depth of water as formerly. If this be so, it was an injury to the plaintiff, for which he was entitled to recover damages. 1
 

 This question should have been submitted to the jury, and this instruction given, as requested by plaintiff’s counsel. The
 
 *271
 
 others are disposed of by the opinion of this court in Boston v. Lecraw.
 

 For these reasons, the judgment is reversed, and
 
 venire de novo
 
 awarded.